United States v. Faufine 22-2709. Council, take a second to come up and make yourselves comfortable at the council table. I understand we have Attorney Anderson for the appellant and you would like to reserve two minutes for rebuttal? That's correct, Your Honor. And you know where the switch is there, yeah. Get the podium exactly where you all like. Good morning, Your Honors. May it please the court. I'm Lucas Anderson here for the appellant, Vonma Faufine. The district court's acceptance of Faufine's guilty plea to one count of a conspiracy to commit wire fraud amounted to a plain error. Can I ask you a preliminary question about that? Yes. Does your client truly wish to go to trial? I'm just trying to check that you've consulted with him because if you win, his plea is withdrawn. His plea will be withdrawn, that's correct. And I want to just make sure that that's what he wants, right? Yes, that's what he... So he wants to go to trial? Or he would have the opportunity to understand exactly what the elements of this crime are and have the opportunity to either go to trial or to plea to that charge as he did the first time. He did not want a plea agreement the first time. Okay, but harmlessness requires a reasonable probability that he would decide to go to trial and plead guilty. But are you telling me that even right now, he doesn't know what he would do? Because if you're telling me right now, he doesn't even know what to do, doesn't that pose a problem for you to demonstrate a reasonable probability that he would not have pled guilty? No. Under the plain error standard, I'm not required to make a stipulation as to what my client would do or wouldn't do, assuming that the government will recharge him with the same thing if he were to win. Well, what do you mean charging with the same thing? He is charged with the thing. There's no if. There's a pending indictment. Correct. So are you just saying that all you have to show is a reasonable probability? That he would not have pled guilty to that. And I also believe, based on everything that's in this relatively concise record, there is a reasonable probability that if he proceeded to trial, he would have won. There's nothing in this record, the complaint, the indictment, the government's proffer at the plea hearing. My problem is that while we talk all the time about Rule 11 being absolute and any violation of it, you go straight to hell in a handbasket and so on, we never do it. You know, I wish we talked straight, frankly, that any number of Rule 11 violations we then ignore because of the facts of the case, they didn't really make any difference. And if that is what our law is, then how do you win? I'm with you, Judge Calabresi, on the court saying in opinion after opinion, we strictly enforce this rule, but harmless error. We strictly enforce this rule, but harmless error. I think the facts of this case are such that regardless of one's attitude on that particular position, I don't think Fofani could have made it any clearer that he believed he understood the elements of this charge, but he did not. He said, yes, Your Honor, I want to plead guilty. Yes, I understand it's a conspiracy to commit wire fraud. No, I did not make an agreement. And then he never said anything about having... But when he was speaking about agreement, he wasn't talking about agreement in the sense of what is sufficient to be a conspiracy charge. He was talking about agreement in a more ordinary way of talking agreement that he and I shake hands on it or something. That is, what he seemed to be speaking to had nothing to do with the facts which are sufficient to support a plea of guilty and conspiracy were there. Well, when he said that, he said we didn't make an agreement. My co-defendant just wanted me to accompany him just to be on the safe side. The government stood up and made that legal... And Mr. Fofani demonstrated the trick of putting blank paper and currency together in aluminum foil, soaking them in a purported chemical and trying to convince the victim that they could turn blank, what were blank sheets, into currency. So he didn't simply agree to accompany him. We have to listen to everything your client said. And I don't understand if your client admitted committing the purported magic trick to deceive the victim, and it's clear that it's also the case that the co-defendant wished to do the same thing, how they did not, in fact, have a shared intent to do the same thing, unless you're arguing that it was purely a matter of coincidence that they both went and they were both trying to commit the exact same fraud on the exact same victim at the exact same time. Not at all, Your Honor. Then how is that not, in fact, a tacit agreement? It's a tacit agreement to two of the three elements of a wire fraud conspiracy. You don't have to agree to a wire. A scheme to get fraud, money or property, and he does have to agree to commit an offense where it's at least under this court's precedence, and I'm citing Zicatello specifically, the government cites in their brief, specifically agree that there's going to be an offense where one person uses interstate wires in furtherance. No, no, no, that has to be reasonably foreseeable. Or reasonably foreseeable. That's different. Now, hang on. Those are two different things. He doesn't have to allocute to an agreement to use interstate wires. So he has already allocated to the first two things, and then the question is whether it's reasonably foreseeable. Now, when he traveled from New Jersey to New York, and he agreed to travel from New Jersey to New York with the co-defendant to meet the victim, how can you reasonably argue that it was not reasonably foreseeable to Fofanay that his co-defendant would have used some means of interstate communication to set up the meeting, unless your argument is that they traveled to Long Island hoping against hope that as a mere matter of coincidence the victim would be there and ready to see the magic trick when they traveled. No, because if I have a telephone call with somebody in another state who I'm trying to Later that day, I go to my cousin and say, get in the car. We're going to go scam somebody. And then we drive to the other state. That makes my cousin guilty of conspiring to commit fraud simpliciter, not a conspiracy to commit federal wire fraud. Unless it is reasonably foreseeable that the wires would have been used to set it up. And that's why I'm asking you why it was not reasonably foreseeable. Everything that the government submitted in terms of their factual allegations, including those that Fofanay was never asked to admit to, indicates, I think they specifically said at the plea hearing, page 33 of the appendix, Fofanay was the person who would do the in-person part of the scam. The district court asked the government, who was it, when you're saying there are these phone calls happening, who was it that was on these phone calls? Please specify what you mean by they. And the government said it was Mr. Cooper, actually, and the confidential informant who was on the phone. So at a trial, if this were at a trial, a reasonable trier of fact could probably find that it was reasonably foreseeable that because phone calls happened, and because there was this travel across state lines, then, oh yeah, it's possible that there was an interstate phone call that happened. But this is in the context of a plea. So you're saying that creates a reasonable probability that your client would have decided that that would have been the issue worth fighting at trial, and a fair chance he would have thought that I'll win on that. That's what you're saying, that that would have subjectively altered his decision. Yes, because based on the record, there's no reason to think that the government had any evidence to indicate that Folfone had any reason to believe that prior to him traveling to Long Island with his cousin, that his cousin had made phone calls in furtherance of the conspiracy. Well, he had made texts back and forth. Were there texts between the co-defendants talking about how this was great and how they were going to make all this money and they were going to be able to expand their operation? Can you remind me, were those texts between the two co-defendants? Those were texts. The government never has argued that that has any relevance to this, but those were intrastate texts from what we can tell from the record, not advancing the conspiracy. Do you think, then, that it would be foreseeable to Mr. Folfone that he and his co-defendant would be texting back and forth, and yet it would have been unforeseeable to him that his co-defendant would be using the very same methods of communication with the victim? I think if that was a trial issue, his trial attorney could say, juries, do you have any reasonable doubt that there was no foreseeability here? How likely are those arguments to work? And therefore, how likely is it really that if we flip this, this guy wouldn't plead guilty? Because that's the Rule 11 question, technically, I guess. Correct. So it seems to me that it isn't just whether certain arguments might be made, but when the guy knows what he did and what these things meant, are we really to say, oh gee, this is somebody who will pull back? Because that's a question before us, technically, under Rule 11. Yes, he wanted to plead guilty to his participation in a fraud to take money. But if he had known, and I don't think there's anything he could have done to signify more that he did not know what the specific elements were. If he had known that, there is at least a reasonable probability. There's no, oh, you have to have a slam dunk trial. One last question for you. Over the course of this hearing, obviously there was a plea hearing. The case was reassigned to Judge Chen. She had a status conference where she confirmed he wanted to plead guilty. But isn't it true that it's sentencing? He got a copy of the PSR. The PSR included, recited the elements of the offense. I understand Mr. Fennay was represented at that time, correct?  And that there was confirmation that he had received and reviewed the PSR with his counsel? I believe so. And that even after having done so, and stated to the court, represented to the court, that he had reviewed the PSR, which included those elements, he did not suggest that he wished in any way to withdraw his plea. Is that correct? That's correct. And I would especially point the court's attention to pages, paragraphs 10 and 11 of the PSR when they describe the co-defendants' different roles in this conduct, and whether the government ever put any facts on record, either to the district court or when they told the probation office about those facts. You have a stronger argument on that point. And that is a recent opinion by Judge Walker in Ivar versus- Ivar Figueroa? Yeah, which says you can't look at things which come after. I know we have cases, Lloyd, which go the other way, but we do have another opinion more recently that casts doubt on whether that can be considered. So if I were you, I'd just say, hey, you'd better not make your argument on that, because we've got an opinion that's going to cause you trouble. And we do make note of that aspect of the Ivar Figueroa case in our reply brief. But the PSR, I think, is relevant to a determination as to whether the government ever had evidence to prove the agreement relating to a wire fraud specifically. Thank you very much. We have a few minutes for rebuttal. Why don't we hear from the government? Good morning, Your Honors, and may it please the court. My name is Charlie Rose. I'm an assistant United States attorney in the Eastern District of New York, and I represent the government appellee in this matter. Nothing appellant counsel just said or is contained in this paper should warrant this court to upset the judgment of the court below. With respect to the appellant's Rule 11 challenge, the defendant's plea was valid, even if the plea proceeding itself could have been conducted in a more straightforward and formal manner. Are you defending the plea proceeding as adequate in alerting the defendant to the nature of the charge, that is to say, the elements? It doesn't appear to me that there's any recitation by anybody during the proceeding of the elements. Correct, Your Honor. There was no recitation of the elements. There was no reading of the indictment. However, Rule 11b1g requires that the defendant be informed of the charges and that the court's ---- But the court was sloppy. Come on. They didn't do what Rule 11 specifically says that they should have done. The court usually relies on a standard plea form. In this matter, the court did not do that. However, under the rule, again, and this court's precedent, it doesn't necessarily need to recite ---- Let's put it another way. This was a very messy transcript. The courts often rely on the government to clean things up, to protect the record. It's a very important role that the government has. It would have been relatively easy, perhaps a little awkward, for the government lawyer to stand up and say, Your Honor, at this point, I'm sure this is what Your Honor was about to say, but it would be helpful to just remind the defendant that the elements of wire fraud conspiracy are as follows. One, two, three. Right? That would have been very easy. It would have taken maybe 30 seconds. And then the district court most likely would have turned to the defendant and said, Do you agree with that? Yes. Do you understand those are the elements? Yes. And then we wouldn't be standing here. Right? Certainly, Your Honor. That formulaic recitation ---- There's an importance to formulas. Correct. And I'm not just saying that that's not ---- So perhaps this is a lesson learned to go back. Certainly. And let everyone in your office know that as much as it sometimes can antagonize a court to feel like a party is correcting a mistake that they don't think they're making, protecting the record is an important thing. Certainly, Your Honor. And I understand the concern of the court. Here, the court did ask the defendant specifically if he understood the elements of the charge. Nobody had recited the elements. So to say, Do you understand the elements? He could have had a subjective understanding that the elements were, I like the color blue and I like the color orange. If you don't know what elements he's purporting to understand, that question is meaningless, correct? I think that it would be meaningless but for the fact that the court then inquired of the defendant of the nature of the charges. And based on not only the defendant's allocution that he assisted in the orchestration. Yes, but this is a defendant who thinks an agreement is different from what an agreement is in law. Okay? That's the second part of it. So this is a defendant whom you can't trust really to understand what the elements are. Now, I'm lucky. I haven't been a district judge and I haven't been a prosecutor. We're unlucky. So I don't know what it is that we should expect them to do. But it's perfectly clear that if you take the language of Rule 11 and what was done, it wasn't covered. Now, maybe because I haven't done these jobs, I've got to look to how we handle those cases and we shrug our shoulders. Where it's pretty clear that the guy would still have pled guilty. But it doesn't do much good to stand here and tell somebody like me that there wasn't sloppiness of a part of a district judge and of a part of a prosecutor to help him out. The government's not representing that it could have been a better plea proceeding. I think we're all in accord on that regard. But the fact is the defendant's elocution and the information that was provided to the court during the plea proceeding on a single count indictment of wire fraud conspiracy, which actually was also the same charge the defendant was arraigned on in the complaint. So actually, there was a question I had. Normally, when a defendant is brought to court on an indictment initially, we're talking about well before the plea hearing, you would be presented with a copy of the indictment, correct? Yes. I was surprised, frankly, that none of the briefs referenced or gave us a transcript from that earlier proceeding to indicate whether perhaps at that time the indictment was brought to the defendant, read aloud to the defendant, or whether there was a waiving of the reading of the indictment, and there was a representation perhaps by defense counsel that he had reviewed the indictment with his client because that could have filled the gap in the record, correct? That is an absence in the record, and that could have filled the gap as well. Okay. Another question. I understand that there was a proposed plea agreement from the government which the defendant opted not to sign, correct? Correct. That was not made a part of the record in the district court. I would assume if the plea agreement followed the normal format I have seen in the past, the plea agreement probably would have laid out the elements of the crime, right? I don't believe that this plea agreement would have specifically expressed the exact elements of the crime. Oftentimes, before Is that not the standard format? Why not? I don't know why not, Your Honor. Because let me suggest this. Most plea agreements I've seen lay out the elements of the crime. And then as part of the colloquy, the court says, have you reviewed the plea agreement? And do you understand it? Have you reviewed it with your lawyer? Ask the lawyer, have you reviewed it with your client? That is an important backstop to ensuring that even if the wording of the colloquy gets off in some way, that we're ensuring that the defendant understands this very important part of the colloquy. It's very important that plea agreements be written in a way, again, to protect the record. And if that is the case, I was going to say I was surprised that even the unexecuted plea agreement was not made part of the record to at least indicate that the client had had a chance to review it and would have then had yet another window of insight into the charges that were brought against him. But to hear that maybe they didn't lay out the elements surprises me and strikes me as exceedingly unwise. With respect to the plea agreement, Your Honor, the parties exchanged plea agreements on two separate occasions. I think that's mentioned in the record. The defense counsel, during the elocution, he admits that he went over the elements of the crime with the defendant in the anticipation of the defendant saying that there was a defense possible because he believed that the confidential informant victim. Absent an enumeration of what those elements are, we don't know whether defense counsel got them right. And again, this is an important part of protecting the record. Say these elements out loud. And then the confirmation from various people saying they've reviewed them for the defendant will protect the record. When things go unsaid, we're left dangling on the harmlessness prong, which here you may have a very strong argument as to. But you can see that this case becomes far more difficult than any case should. The government is in agreement that in a better light this would not have happened. I submit that the record shows that the court believed that the defendant understood the charges based on his elocution. May I ask you, the elocution can be read to check the actus reus and mens rea boxes. Yes. But not the jurisdictional element. And that was the focus of the colloquy with your adversary. So what must the defendant have understood or appreciated with respect to the jurisdictional element? And what's the factual basis as we sit here today to believe there was an interstate wire communication of furtherance? I do submit that, and I think the court was alluding to this when my colleague was arguing, that there's no reasonable probability here that this defendant was going to go to trial on the thought that he was unaware of the reasonable foreseeability of his co-defendant cousin with whom he had conducted this fraud in multiple jurisdictions on multiple occasions that he would have not known that the activity was coordinated here. What activity? The interstate activity? Yes, Your Honor, the phone calls between the co-defendant coordinating the interstate travel to set up the meeting with the victim on Long Island from outside of Long Island. Defense counsel tried to indicate that it was his belief that the evidence wouldn't show that the defendant could have reasonably foreseen the defendant was aware that his cousin contacted the victim here. The evidence at trial would certainly show correspondence between the confidential informant and the co-defendant in text messages as the court had indicated before. I see that my time's up. Can I briefly answer the question? Yeah, why don't you just finish that one line of thought. So there were calls that were made during the planning of this. The defendant was obviously aware that this multi-month coordinated effort to orchestrate a fraud to act in concert with his co-defendant cousin was necessary. And evidence at trial the government submits would show that the defendant not only was aware but the defendant is in the background of some of those calls. Thank you. Okay, thank you.  Mr. Anderson, you've reserved two minutes for rebuttal. We said many of the things you've been urging us to focus on. I appreciate that. Thank you. And there's just two things I want to say now. In February we moved to supplement the record of this case to include the proposed plea agreement, the one that was discussed at the sentencing plea. That motion was granted. It's in the record. Document number 65-3 on the docket of this court. 65-3? The elements of the crime were not discussed there. And yes, 65-3 of the docket. And the elements are not listed in that? Correct. Nor are any facts alleged or supposedly stipulated. Second, as to whether Folfone was obviously aware that phone calls happened simply because of the fact that they took place, if this record were exactly the same, everything everybody said was exactly the same, except for at one point the government says at the plea proceeding Cooper also mailed a letter to the co-operating informant in Long Island, does that mean that Folfone also issued a valid plea conspiring to commit mail fraud? Are these jurisdictional elements simply automatic just because a fraud happens and there's also interstate travel to make them happen? As long as we can establish that somebody made a phone call at some point, then they must have known. If they wrote a letter at some point, then everybody else in the conspiracy must have known. And would you agree, though, that if we were to find that that particular provision of Rule 11 was not satisfied, that in fact the district court had not insured, either that the district court had informed your client of the elements or that he fully understood the nature of the offense, the question then becomes the third prong of plain error analysis, which is is there a reasonable probability that had he been so informed, had he so understood, he would nevertheless have opted not to plead guilty? Yes, and if there was any indication in anything the government said in this record that they had evidence to establish that he had a reason to foresee phone calls would take place in connection with this, then I would have a much tougher road to hoe in terms of making that argument. Thank you. If there are no further questions from the court, I thank you. No, thank you very much. Thanks to both of you, and we will take the case under advisement.